NICHOLAS A. TRUTANICH
United States Attorney
Nevada Bar Number 13644
JAMIE MICKELSON
Assistant United States Attorney
501 Las Vegas Boulevard South, Suite 1100
Las Vegas, Nevada 89101
Telephone: (702) 388-6281
Email: jamie.mickelson@usdoj.gov

ROBERT A. ZINK
Chief, Fraud Section
Criminal Division, U.S. Department of Justice
WILLIAM E. JOHNSTON
Assistant Chief
1400 New York Ave NW
Washington, D.C. 20530
Telephone: (202) 514-0687
Email: william.johnston4@usdoj.gov

*Attorneys for the United States*

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEVADA

| | |
|---|---|
| UNITED STATES OF AMERICA, | **CRIMINAL INDICTMENT** |
| Plaintiff, | Case No. 2:20-cr- 231 APG NJK |
| v. | **VIOLATIONS:** |
| BRANDON CASUTT, | Title 18, United States Code, Section 1014 – False Statement to a Financial Institution; |
| Defendant. | Title 18, United States Code, Section 1343 – Wire Fraud; |
| | Title 18, United States Code, Section 1344(2) – Bank Fraud; |
| | Title 18, United States Code, Section 1956(a)(1)(B)(i) – Concealment Money Laundering; |



1

Title 18, United States Code, Section 1957
– Engaging in Transactions in Unlawful
Proceeds

**FORFEITURE ALLEGATION**

**THE GRAND JURY CHARGES THAT:**

**Background**

At all times relevant to the Indictment, unless otherwise stated:

1.     Defendant Brandon CASUTT was a United States citizen, residing in Las Vegas, Nevada and then in Henderson, Nevada.

2.     Skyler's C.F. Foundation ("SCFF") was a non-profit corporation registered and created in the State of Nevada since 2007.  CASUTT was listed as the President and registered agent of SCFF.

3.     Title Company A was a title company in Las Vegas, Nevada that provided closing and escrow services for real estate transactions.

*Paycheck Protection Program*

4.     The Coronavirus Aid, Relief, and Economic Security ("CARES") Act is a federal law enacted in or around March 2020 and designed to provide emergency financial assistance to the millions of Americans who are suffering the economic effects caused by the COVID-19 pandemic.  One source of relief provided by the CARES Act was the authorization of up to $349 billion in forgivable loans to small businesses for job retention and certain other expenses, through a program referred to as the Paycheck Protection Program ("PPP").  In or around April 2020, Congress authorized over $300 billion in additional PPP funding.

5.      In order to obtain a PPP loan, a qualifying business must submit a PPP loan application, which is signed by an authorized representative of the business. The PPP loan application requires the business (through its authorized representative) to acknowledge the program rules and make certain affirmative certifications in order to be eligible to obtain the PPP loan. In the PPP loan application, the small business (through its authorized representative) must state, among other things, its: (a) average monthly payroll expenses; and (b) number of employees. These figures are used to calculate the amount of money the small business is eligible to receive under the PPP. In addition, businesses applying for a PPP loan must provide documentation showing their payroll expenses.

6.      A PPP loan application must be processed by a participating lender, such as a financial institution. If a PPP loan application is approved, the participating lender funds the PPP loan using its own monies, which are 100% guaranteed by the Small Business Administration ("SBA"). Data from the application, including information about the borrower, the total amount of the loan, and the listed number of employees, is transmitted by the lender to the SBA in the course of processing the loan.

7.      PPP loan proceeds must be used by the business on certain permissible expenses—payroll costs, interest on mortgages, rent, and utilities. The PPP allows the interest and principal on the PPP loan to be entirely forgiven if the business spends the loan proceeds on these expense items within a designated period of time and uses a certain percentage of the PPP loan proceeds on payroll expenses.

*The Economic Injury Disaster Relief Program*

8.      The Economic Injury Disaster Loan ("EIDL") program is a SBA program that provides low-interest financing to small businesses, renters, and homeowners in regions affected by declared disasters.

3

9.    Another source of relief provided by the CARES Act was the authorization for the SBA to provide EIDLs of up to $2 million to eligible small businesses experiencing substantial financial disruption due to the COVID-19 pandemic. In addition, the CARES Act authorized the SBA to issue advances of up to $10,000 to small businesses within three days of applying for an EIDL. The amount of the advance is determined by the number of employees the applicant certifies having. The advances do not have to be repaid.

10.    In order to obtain an EIDL and advance, a qualifying business must submit an application to the SBA and provide information about its operations, such as the number of employees, gross revenues for the 12-month period preceding the disaster, and cost of goods sold in the 12-month period preceding the disaster. In the case of EIDLs for COVID-19 relief, the 12-month period was that preceding January 31, 2020. The applicant must also certify that all the information in the application is true and correct to the best of the applicant's knowledge.

11.    EIDL applications are submitted directly to the SBA and processed by the agency with support from a government contractor, Rapid Finance. The amount of the loan, if the application is approved, is determined based, in part, on the information provided by the application about employment, revenue, and cost of goods, as described above. Any funds issued under an EIDL or advance are issued directly by the SBA. EIDL funds can be used for payroll expenses, sick leave, production costs, and business obligations, such as debts, rent, and mortgage payments. If the applicant also obtains a loan under the PPP, the EIDL funds cannot be used for the same purpose as the PPP funds.

*Relevant Lending Institutions*

12.     Financial Institution A was a bank insured by the Federal Deposit Insurance Corporation (FDIC), with headquarters in Fort Lee, New Jersey, that was authorized to participate as a lender in the PPP by the SBA.

13.     Financial Institution B was a bank insured by the FDIC, with headquarters in Minneapolis, Minnesota, that was authorized to participate as a lender in the PPP by the SBA.

14.     Lending Institution A was a financial services company, with headquarters in Lake Success, New York, that was authorized to participate as a lender in the PPP by the SBA.

## The Scheme to Defraud

15.     Beginning in or around April 2020 and continuing until on or about August 21, 2020, CASUTT and others knowingly devised, intended to devise, and participated in a scheme and artifice to defraud the SBA, Financial Institution A, Financial Institution B, and Lending Institution A and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, as further described below.

## Purpose of the Scheme to Defraud

16.     It was the purpose of the scheme for CASUTT (1) to unjustly enrich himself and others by fraudulently obtaining EIDL and PPP loan proceeds, and (2) to conceal his misappropriation of the PPP loan proceeds by laundering them through family, friends, and associates under the guise of payroll payments.

5

1

### Manner and Means of the Scheme to Defraud

2   *EIDL Loan*

3        17.    As part of the scheme to defraud, on or about April 2, 2020, CASUTT

4   submitted an electronic EIDL application to the SBA in the name of SCFF.  On the

5   application, CASUTT falsely listed (1) $600,000 as the amount of revenue that SCFF had

6   for the 12 months preceding January 31, 2020, when in truth and fact SCFF had far less

7   revenue, (2) $648,000 as the amount of costs incurred by SCFF for the 12 months preceding

8   January 31, 2020, when in truth and fact SCFF had far less costs; and (3) 32 as the number

9   of employees SCFF had, when in truth and fact SCFF had far fewer employees.  On or

10   about April 27, 2020, the SBA transferred $10,000 to a Wells Fargo account ending in 1455

11   in the name of SCFF ("WF account x1455"), which represented an advance on the EIDL

12   loan.

13        18.    As further part of the scheme, on or about May 30, 2020, CASUTT signed

14   the note and loan authorization documents for the EIDL loan.  In the loan authorization

15   and agreement, CASUTT made the following material misrepresentations: (1) CASUTT

16   falsely certified that the loan proceeds would only be used for "working capital" (that is,

17   rent, utilities, wages, etc.), when, in fact, he intended to use the proceeds for his personal

18   benefit; and (2) CASUTT falsely certified that the representations in the loan application

19   were true and correct, when, in fact, he knew the loan application misstated SCFF's

20   revenue, costs, and number of employees.  On or about June 4, 2020, the SBA disbursed the

21   proceeds from the EIDL loan into WF account x1455 in the amount of approximately

22   $149,900.

23

24

1  *Sky DeSign PPP Loan Application*

2      19.    As further part of the scheme, on or about April 11, 2020, CASUTT

3  submitted an electronic loan application to Financial Institution A in his own name

4  requesting a loan in the amount of $349,775.  CASUTT listed the DBA for his sole

5  proprietorship as Sky DeSign, and classified his business as an independent contractor in the

6  commercial screen-printing business.  In support of his application, CASUTT submitted a

7  signed IRS Form 941 in his own name that falsely indicated he had paid $279,820 in wages

8  in the first quarter of 2020, when in truth and fact he had paid no wages and had never filed

9  the Form 941 with the IRS.

10      20.    As further part of the scheme, on or about May 13, 2020, CASUTT signed

11  the PPP Borrower Application Form (SBA Form 2483) with Financial Institution A, in

12  which he made the following material misrepresentations:  (1) CASUTT falsely represented

13  that Sky DeSign's average monthly payroll was $139,910, when in fact Sky DeSign had no

14  employees nor paid salaries; (2)  CASUTT falsely certified that his business was in

15  operation on February 15, 2020, and had employees for whom it paid salaries and payroll

16  taxes or paid independent contractors, when in fact Sky DeSign was not in operation nor

17  had employees or paid salaries; and (3) CASUTT falsely certified that the loan funds would

18  be used to retain workers and maintain payroll or make mortgage interest payments, lease

19  payments, and utility payments, in accordance with PPP rules, when, in fact, CASUTT

20  intended to divert the proceeds for personal benefit.

21      21.    It was further part of the scheme that, on or about May 15, 2020, CASUTT

22  caused the proceeds of the fraudulently obtained PPP loan, $349,775.00, to be transferred by

23  Financial Institution A into a Wells Fargo account ending in 4506 ("WF account x4506"),

24  held in the name of CASUTT and Family Member A, CASUTT's wife.

22.    It was further part of the scheme that, after receiving the PPP loan proceeds from Financial Institution A, CASUTT laundered the proceeds by (1) obtaining large cashier's checks made out to himself; and (2) writing checks to friends, family, associates, and himself in the amount of $8,330. At times, CASUTT included "pandemic pay" or "back pay" in the memo lines to make it appear the payees were CASUTT's employees. CASUTT then rerouted the funds to WF account x1455, where the EIDL funds had been originally deposited.

23.    It was further part of the scheme that in June 2020 CASUTT used the proceeds of the PPP and EIDL loans in WF account x1455 to purchase a house for approximately $400,000 in Henderson, Nevada, into which CASUTT moved his family.

*SCFF PPP Loan Applications*

24.    As further part of the scheme, CASUTT submitted four PPP loan applications in the name of SCFF to three different lending institutions.  Each loan application contained material misrepresentations regarding SCFF's number of employees and average monthly payroll, as identified below:

| Approximate Date Submitted | Lending Institution | Loan Amount Sought | Number of Employees | Monthly Payroll |
|---|---|---|---|---|
| April 9, 2020 | Financial Institution A | $1,992,000 | 96 | $796,800 |
| June 18, 2020 | Financial Institution A | $349,965 | 18 | $139,986 |
| July 11, 2020 | Lending Institution A | $349,965 | 18 | $139,986 |
| July 14, 2020 | Lending Institution B | $231,000 | 12 | $92,400 |

25.    As further part of the scheme, in support of each PPP application for SCFF, CASUTT submitted fraudulent IRS Form 941s that supported the average monthly payroll claimed on each loan application.  For the application to Lending Institution B, CASUTT

also submitted bank statements for an unrelated business to make it appear that SCFF paid

$92,400 in monthly payroll, when in fact SCFF had no payroll.  None of the SCFF PPP

loans were ultimately approved.

## COUNTS ONE AND TWO
(Wire Fraud)

26.    The allegations in paragraphs 1 through 25 are re-alleged and incorporated as

if fully set forth herein.

27.    On or about the dates set forth below, in the State and Federal District of

Nevada, and elsewhere,

### BRANDON CASUTT,

defendant herein, having devised and participated in the above-described scheme and

artifice to defraud, and to obtain money and property by means of false and fraudulent

pretenses, representations, and promises, did, for the purpose of executing the scheme and

artifice, transmit and cause to be transmitted by means of wire, radio, and television

communication in interstate and foreign commerce, writings, signs, signals, pictures, and

sounds, as further described below:

| COUNT | DATE | DESCRIPTION OF WIRE |
|-------|------|---------------------|
| 1 | May 15, 2020 | Interstate wire transfer in the amount $349,775.00 from Financial Institution A in New Jersey to WF account x4506 in Nevada |
| 2 | June 4, 2020 | Interstate wire transfer in the amount of $149,900 from the Small Business Administration in Colorado to WF account x1455 in Nevada |

All in violation of Title 18, United States Code, Section 1343.

1

2

## COUNTS THREE AND FOUR
(Bank Fraud)

3    28.    The allegations in paragraphs 1 through 25 are re-alleged and incorporated as

4 if fully set forth herein.

5    29.    From in or around April 2020 until on or about August 21, 2020, in the State

6 and Federal District of Nevada, and elsewhere,

7    **BRANDON CASUTT,**

8 defendant herein, knowingly devised, intended to devise, and participated in the above-

9 described scheme and artifice to obtain the moneys, funds, credits, assets, securities, and

10 property owned by and under the custody and control of Financial Institution A and

11 Financial Institution B by means of materially false and fraudulent pretenses,

12 representations, and promises.

13    30.    On or about the dates identified below, in the State and Federal District of

14 Nevada, and elsewhere,

15    **BRANDON CASUTT,**

16 defendant herein knowingly executed the above-described scheme, each execution

17 constituting a separate count.

| COUNT | DATE | DESCRIPTION OF EXECUTION |
|-------|------|--------------------------|
| 3 | April 11, 2020 | Submission to Financial Institution A of PPP loan application in the name of Brandon Casutt d/b/a Sky DeSign seeking $349,775 |
| 4 | July 14, 2020 | Submission to Financial Institution B of PPP loan application in the name of SCFF seeking $231,000 |

22 All in violation of Title 18, United States Code, Section 1344(2).

23

24

## COUNT FIVE
(False Statement to a Financial Institution)

31. The allegations in paragraphs 1 through 25 are re-alleged and incorporated as if fully set forth herein.

32. On or about May 13, 2020, in the State and Federal District of Nevada, and elsewhere,

**BRANDON CASUTT,**

defendant herein, knowingly made a false statement and report for the purposes of influencing the action of a financial institution, whose accounts were insured by the Federal Deposit Insurance Corporation, upon an application, agreement, and loan, to wit: false statements on a Borrower Application Form (SBA Form 2483) for a $349,775 loan under the Paycheck Protection Program from Financial Institution A about (1) the number of employees in CASUTT's business Sky DeSign, (2) the amount of monthly payroll for Sky DeSign, and (3) the intended use of the loan proceeds, in violation of Title 18, United States Code, Section 1014.

## COUNTS SIX AND SEVEN
(Concealment Money Laundering)

33. The allegations in paragraphs 1 through 30 are re-alleged and incorporated as if fully set forth herein.

34. On or about June 16, 2020, in the State and Federal District of Nevada and elsewhere,

**BRANDON CASUTT,**

defendant herein, conducted the following financial transactions involving the proceeds of specified unlawful activity, that is, wire fraud, in violation of Title 18, United States Code,

11

Section 1343, as alleged in Count One, and bank fraud, in violation of Title 18, United

States Code, Section 1344, as alleged in Count Three, knowing that the property involved

represented the proceeds of unlawful activity and knowing that the transaction was designed

in whole and in part to conceal and disguise the nature, the location, the source, the

ownership, and the control of the unlawful proceeds, to wit:

| COUNT | DESCRIPTION OF FINANCIAL TRANSACTION |
|-------|--------------------------------------|
| 6 | Deposit of $8,230 in cash into WF account x1455 from a check made out to Sit.H in the amount of $8,330 drawn on WF account x4506 |
| 7 | Deposit of $8,230 in cash into WF account x1455 from a check made out to Sis.H in the amount of $8,330 drawn on WF account x4506 |

All in violation of Title 18, United States Code, Sections 1956(a)(1)(B)(i) and 2.

## COUNT EIGHT
### (Engaging in Transactions in Unlawful Proceeds)

35.     The allegations in paragraphs 1 through 30 are re-alleged and incorporated as

if fully set forth herein.

36.     On or about June 23, 2020, in the State and Federal District of Nevada and

elsewhere,

### BRANDON CASUTT,

defendant herein, knowingly engaged in a monetary transaction in criminally derived

property of a value greater than $10,000 that was in fact derived from specified unlawful

activity, that is, wire fraud, in violation of Title 18, United States Code, Section 1343, as

alleged in Counts One and Two, and bank fraud, in violation of Title 18, United States

Code, Section 1344, as alleged in Count Three, to wit: CASUTT initiated a wire transfer in

the amount of $388,859.03 from Wells Fargo bank account ending in 1455, held in the

name of Skyler's C.F. Foundation, to an account at U.S. Bank held in the name of Title

Company A for the purchase of a house in Henderson, Nevada, all in violation of Title 18, United States Code, Section 1957.

## FORFEITURE ALLEGATION ONE
(Wire Fraud, Bank Fraud, and False Statement to a Financial Institution)

1.  The allegations contained in Counts One, Three, and Five of this Criminal Indictment are hereby realleged and incorporated herein by reference for the purpose of alleging forfeiture pursuant to 18 U.S.C. § 981(a)(1)(C) with 28 U.S.C. § 2461(c) and 18 U.S.C. § 982(a)(2)(A).

2.  Upon conviction of any of the felony offenses charged in Counts One, Three, and Five of this Criminal Indictment,

### BRANDON CASUTT,

defendant herein, shall forfeit to the United States of America, any property, real or personal, which constitutes or is derived from proceeds traceable to a violation of 18 U.S.C. § 1344, or a conspiracy to commit such offense:

defendant herein, shall forfeit to the United States of America, any property, real or personal, which constitutes or is derived from proceeds traceable to a violation of 18 U.S.C. § 1014, a specified unlawful activity as defined in 18 U.S.C. § 1956(c)(7)(D), or a conspiracy to commit such offense:

defendant herein, shall forfeit to the United States of America, any property, real or personal, which constitutes or is derived from proceeds traceable to violations of 18 U.S.C. §§ 1343 and 1344, specified unlawful activities as defined in 18 U.S.C. § 1956(c)(7)(A) and 1961(1)(B), or a conspiracy to commit such offenses:

defendant herein, shall forfeit to the United States of America, any property constituting, or derived from, proceeds obtained directly or indirectly, as the result of

13

violations of 18 U.S.C. §§ 1014, 1343, and 1344, affecting a financial institution, or a

conspiracy to violate such offenses:

      1.  an in personam criminal forfeiture money judgment including, but not

          limited to, at least $509,675;

      2.  $8,076.60

      3.  $10,794.58

      4.  $59,965

      5.  $11,600.43

      6.  1924 Coralino Drive, Henderson, Nevada 89074, more particularly

          described as:

PARCEL I:

LOT TWO (2) IN BLOCK TWO (2) OF SILVER MILL – PHASE 1, AS SHOWN
BY MAP THEREOF ON FILE IN BOOK 47 OF PLATS, PAGE 8, IN THE
OFFICE OF THE COUNTY RECORDER OF CLARK COUNTY, NEVADA.

PARCEL II:

NON-EXCLUSIVE EASEMENTS FOR ACCESS, INGRESS, EGRESS, AND
SUCH OTHER PURPOSES AS ARE REASONABLY NECESSARY FOR THE
USE AND ENJOYMENT OF SAID LAND, AS THE SAME ARE SET FORTH
IN THAT CERTAIN DECLARATION OF COVENANTS, CONDITIONS AND
RESTRICTIONS RECORDED NOVEMBER 25, 1987 IN BOOK 871125 OF
OFFICIAL RECORDS AS DOCUMENT NO. 00480 AND AS THE SAME ARE
SUBSEQUENTLY AMENDED FROM TIME TO TIME, AND ALL
IMPROVEMENTS AND APPURTENANCES THEREON, APN: 178-17-514-002

(all of which constitutes property).

     3.  If any property being subject to forfeiture pursuant to 18 U.S.C. § 981(a)(1)(C)

with 28 U.S.C. § 2461(c) and 18 U.S.C. § 982(a)(2)(A), as a result of any act or omission of

the defendant –

      a.  cannot be located upon the exercise of due diligence;

b. has been transferred or sold to, or deposited with, a third party;

c. has been placed beyond the jurisdiction of the court;

d. has been substantially diminished in value; or

e. has been commingled with other property which cannot be divided without difficulty;

it is the intent of the United States of America, pursuant to 21 U.S.C. § 853(p), to seek forfeiture of any other property of the defendant for the property listed above.

All pursuant to 18 U.S.C. § 981(a)(1)(C) with 28 U.S.C. § 2461(c); 18 U.S.C. § 982(a)(2)(A); 18 U.S.C. §§ 1014, 1343, and 1344; and 21 U.S.C. § 853(p).

## FORFEITURE ALLEGATION TWO
### (Wire Fraud)

1. The allegations contained in Count Two of this Criminal Indictment are hereby realleged and incorporated herein by reference for the purpose of alleging forfeiture pursuant to 18 U.S.C. § 981(a)(1)(C) with 28 U.S.C. § 2461(c).

2. Upon conviction of the felony offense charged in Count Two of this Criminal Indictment,

**BRANDON CASUTT,**

defendant herein, shall forfeit to the United States of America, any property, real or personal, which constitutes or is derived from proceeds traceable to a violation of 18 U.S.C. § 1343, a specified unlawful activity as defined in 18 U.S.C. § 1956(c)(7)(A) and 1961(1)(B), or a conspiracy to commit such offense:

1. an in personam criminal forfeiture money judgment including, but not limited to, at least $509,675;

2. $8,076.60

15

3. $10,794.58

4. $59,965

5. $11,600.43

6. 1924 Coralino Drive, Henderson, Nevada 89074, more particularly

   described as:

PARCEL I:

LOT TWO (2) IN BLOCK TWO (2) OF SILVER MILL – PHASE 1, AS SHOWN
BY MAP THEREOF ON FILE IN BOOK 47 OF PLATS, PAGE 8, IN THE
OFFICE OF THE COUNTY RECORDER OF CLARK COUNTY, NEVADA.

PARCEL II:

NON-EXCLUSIVE EASEMENTS FOR ACCESS, INGRESS, EGRESS, AND
SUCH OTHER PURPOSES AS ARE REASONABLY NECESSARY FOR THE
USE AND ENJOYMENT OF SAID LAND, AS THE SAME ARE SET FORTH
IN THAT CERTAIN DECLARATION OF COVENANTS, CONDITIONS AND
RESTRICTIONS RECORDED NOVEMBER 25, 1987 IN BOOK 871125 OF
OFFICIAL RECORDS AS DOCUMENT NO. 00480 AND AS THE SAME ARE
SUBSEQUENTLY AMENDED FROM TIME TO TIME, AND ALL
IMPROVEMENTS AND APPURTENANCES THEREON, APN: 178-17-514-002

(all of which constitutes property).

    3. If any property being subject to forfeiture pursuant to 18 U.S.C. § 981(a)(1)(C)

with 28 U.S.C. § 2461(c), as a result of any act or omission of the defendant –

    a. cannot be located upon the exercise of due diligence;

    b. has been transferred or sold to, or deposited with, a third party;

    c. has been placed beyond the jurisdiction of the court;

    d. has been substantially diminished in value; or

    e. has been commingled with other property which cannot be divided without

   difficulty;

it is the intent of the United States of America, pursuant to 21 U.S.C. § 853(p), to seek

16

1  forfeiture of any other property of the defendant for the property listed above.

2      All pursuant to 18 U.S.C. § 981(a)(1)(C) with 28 U.S.C. § 2461(c); 18 U.S.C. §

3  1343; and 21 U.S.C. § 853(p).

4

5  ## FORFEITURE ALLEGATION THREE
(Concealment Money Laundering and Engaging in Transactions in Unlawful Proceeds)

6      1.  The allegations contained in Counts Six through Eight of this Criminal

7  Indictment are hereby realleged and incorporated herein by reference for the purpose of

8  alleging forfeiture pursuant to 18 U.S.C. § 981(a)(1)(A) with 28 U.S.C. § 2461(c); 18 U.S.C.

9  § 981(a)(1)(C) with 28 U.S.C. § 2461(c); and 18 U.S.C. § 982(a)(1).

10     2.  Upon conviction of any of the felony offenses charged in Counts Six through

11  Eight of this Criminal Indictment,

12                    **BRANDON CASUTT,**

13      defendant herein, shall forfeit to the United States of America, any property, real or

14  personal, involved in transactions or attempted transactions in violation of 18 U.S.C. §§

15  1956(a)(1)(B)(i) and 1957, or any property traceable to such property:

16      defendant herein, shall forfeit to the United States of America, any property, real or

17  personal, which constitutes or is derived from proceeds traceable to violations of 18 U.S.C.

18  §§ 1956(a)(1)(B)(i) and 1957, specified unlawful activities as defined in 18 U.S.C. §§

19  1956(c)(7)(A) and 1961(1)(B), or a conspiracy to commit such offenses:

20      defendant herein, shall forfeit to the United States of America, any property, real or

21  personal, involved in violations of 18 U.S.C. §§ 1956(a)(1)(B)(i) and 1957, or any property

22  traceable to such property

23      1.  an in personam criminal forfeiture money judgment including, but not limited

24          to, at least $359,900 as to Counts Six and Seven;

17

2.  an in personam criminal forfeiture money judgment including, but not limited to, at least $388,859.03 as to Count Eight;

3.  $8,076.60

4.  $10,794.58

5.  $59,965

6.  $11,600.43

7.  1924 Coralino Drive, Henderson, Nevada 89074, more particularly described as:

PARCEL I:

LOT TWO (2) IN BLOCK TWO (2) OF SILVER MILL – PHASE 1, AS SHOWN BY MAP THEREOF ON FILE IN BOOK 47 OF PLATS, PAGE 8, IN THE OFFICE OF THE COUNTY RECORDER OF CLARK COUNTY, NEVADA.

PARCEL II:

NON-EXCLUSIVE EASEMENTS FOR ACCESS, INGRESS, EGRESS, AND SUCH OTHER PURPOSES AS ARE REASONABLY NECESSARY FOR THE USE AND ENJOYMENT OF SAID LAND, AS THE SAME ARE SET FORTH IN THAT CERTAIN DECLARATION OF COVENANTS, CONDITIONS AND RESTRICTIONS RECORDED NOVEMBER 25, 1987 IN BOOK 871125 OF OFFICIAL RECORDS AS DOCUMENT NO. 00480 AND AS THE SAME ARE SUBSEQUENTLY AMENDED FROM TIME TO TIME, AND ALL IMPROVEMENTS AND APPURTENANCES THEREON, APN: 178-17-514-002

(all of which constitutes property).

3.  If any property subject to forfeiture pursuant to 18 U.S.C. § 981(a)(1)(A) with 28 U.S.C. § 2461(c); 18 U.S.C. § 981(a)(1)(C) with 28 U.S.C. § 2461(c); and 18 U.S.C. § 982(a)(1), as a result of any act or omission of the defendant-

a.  cannot be located upon the exercise of due diligence;

b.  has been transferred or sold to, or deposited with, a third party;

c.  has been placed beyond the jurisdiction of the court;

d.  has been substantially diminished in value; or

e.  has been commingled with other property which cannot be divided without
    difficulty;

it is the intent of the United States of America, pursuant to 21 U.S.C. § 853(p), to seek

forfeiture of any other property of the defendant for the property listed above.

All pursuant to 18 U.S.C. § 981(a)(1)(A) with 28 U.S.C. § 2461(c); 18 U.S.C. §

981(a)(1)(C) with 28 U.S.C. § 2461(c); 18 U.S.C. § 982(a)(1); 18 U.S.C. §§ 1956(a)(1)(B)(i)

and 1957; and 21 U.S.C. § 853(p).

**DATED** this 2nd day of September, 2020.

**A TRUE BILL:**



/S/
FOREPERSON OF THE GRAND JURY



ROBERT A. ZINK
Chief, Fraud Section



WILLIAM E. JOHNSTON
Assistant Chief



NICHOLAS A. TRUTANICH
United States Attorney



JAMIE MICKELSON
Assistant United States Attorney