JASON M. FRIERSON
United States Attorney
Nevada Bar No. 7709
DANIEL D. HOLLINGSWORTH
Assistant United States Attorney
Nevada State Bar No. 1925
501 Las Vegas Boulevard South, Suite 1100
Las Vegas, Nevada 89101
(702) 388-6336
Daniel.Hollingsworth@usdoj.gov
*Attorneys for the United States*

UNITED STATES DISTRICT COURT
DISTRICT OF NEVADA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>BRANDON CASUTT,<br><br>Defendant. | 2:20-CR-231-APG-NJK<br><br>**ORDER GRANTING**<br><br>**United States of America's Motion for an Interlocutory Order of Sale of 1924 Coralino Drive, Henderson, Nevada 89074** |

The United States moves this Court to issue an Order for an Interlocutory Sale for 1924 Coralino Drive, Henderson, Nevada 89074[1] (Coralino or the property), authorizing the Internal Revenue Service (IRS) to sell Coralino through one of its approved methods. Brandon Casutt (Casutt) purchased Coralino through Skyler's C.F. Foundation, Inc., with illegal proceeds and this Court ordered the forfeiture of the

---

[1] 1924 Coralino Drive, Henderson, Nevada 89074, more particularly described as:
PARCEL I:
LOT TWO (2) IN BLOCK TWO (2) OF SILVER MILL – PHASE 1, AS SHOWN BY MAP THEREOF ON FILE IN BOOK 47 OF PLATS, PAGE 8, IN THE OFFICE OF THE COUNTY RECORDER OF CLARK COUNTY, NEVADA.
PARCEL II:
NON-EXCLUSIVE EASEMENTS FOR ACCESS, INGRESS, EGRESS, AND SUCH OTHER PURPOSES AS ARE REASONABLY NECESSARY FOR THE USE AND ENJOYMENT OF SAID LAND, AS THE SAME ARE SET FORTH IN THAT CERTAIN DECLARATION OF COVENANTS, CONDITIONS AND RESTRICTIONS RECORDED NOVEMBER 25, 1987 IN BOOK 871125 OF OFFICIAL RECORDS AS DOCUMENT NO. 00480 AND AS THE SAME ARE SUBSEQUENTLY AMENDED FROM TIME TO TIME, AND ALL IMPROVEMENTS AND APPURTENANCES THEREON, APN: 178-17-514-002.

property as it is listed in the Forfeiture Allegations of the Criminal Indictment, the Preliminary Order of Forfeiture, and the Amended Final Order of Forfeiture.[2]

The grounds for granting the Order for an Interlocutory Sale of 1924 Coralino Drive are as follows: First, this Court is authorized to approve interlocutory sales. Second, the HOA and Clark County Treasurer are accumulating losses because they are unable to collect their taxes and fees while their interests in Coralino are extinguished. Selling the property would allow both entities to begin collecting fees again instead of losing revenue through the time of the appeal. Third, granting an interlocutory sale will avoid accidents and liability accruing against Coralino while it is in the custody and control of the IRS. Fourth, the sooner Coralino is sold the more proceeds will be available to pay toward Casutt's money judgment and possibly to pay victims through the restoration process, an exclusive Executive Branch decision delegated only to the Chief of MLARS.

Through the Interlocutory Order of Sale, the United States requests this Court to authorize the United States Treasury to direct its contractor to designate a real estate broker or agent to sell 1924 Coralino Drive through one of the Court's approved methods.

This Motion is made and is based on the papers and pleadings on file herein, the attached Exhibits, and the attached Memorandum of Points and Authorities.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I. STATEMENT OF THE CASE

#### A. Procedural History

On September 2, 2020, the Grand Jury returned an Indictment, charging Brandon Casutt in Counts One and Two with wire fraud in violation of 18 U.S.C. § 1343; in Counts Three and Four with bank fraud in violation of 18 U.S.C. § 1344(2); in Count Five with false statement to a financial institution in violation of 18 U.S.C. § 1014; in Counts Six and Seven with concealment money laundering in violation of 18 U.S.C. § 1956(a)(1)(B)(i) and

---

[2] Criminal Indictment (Indictment), ECF No. 12; Preliminary Order of Forfeiture (POOF), ECF No. 156; Amended Final Order of Forfeiture (FOOF), ECF No. 223.

(2); and in Count Eight with engaging in transactions in unlawful proceeds in violation of 18 U.S.C. § 1957.[3]

On October 14, 2022, Casutt pled guilty to Counts One and Six.[4] Casutt agreed to, and this Court ordered, the forfeiture of the real property located at 1924 Coralino Drive, seized cash, and criminal forfeiture money judgements of $509,675 for wire fraud and $359,900 for concealment money laundering with the total collected money judgment amount not to exceed $509,675 under the forfeiture statutes, and the net sale proceeds of Coralino and the cash will be applied toward the payment of the money judgments.[5]

On October 25, 2022, the government filed its Motion to Prevent Foreclosure under 21 U.S.C. § 853(k) by Village of Silver Springs Community Association (HOA).[6] On November 29, 2022, this Court signed the Order Granting the Motion.[7]

On October 26, 2022, the Internal Revenue Service-CI personally served The Village of Silver Springs Community Association with copies of the Preliminary Order of Forfeiture and the Notice. Service was accepted by Brandon Wood, Chief Legal Officer.[8]

On October 27, 2022, the Internal Revenue Service-CI personally served The Village of Silver Springs Community Association, c/o Jon Copeland, President, with copies of the Preliminary Order of Forfeiture and the Notice. Service was accepted by Isabella Ruff, Supervising Community Manager.[9]

On October 27, 2022, the Internal Revenue Service-CI personally served The Village of Silver Springs Community Association, c/o Jonathan Jorgenson, with copies of the Preliminary Order of Forfeiture and the Notice. Service was accepted by Isabella Ruff, Supervising Community Manager.[10]

---

[3] Indictment, ECF No. 12.
[4] Indictment, ECF No. 12; Change of Plea, ECF No. 151; Plea Agreement, ECF No. 154.
[5] POOF, ECF No. 156.
[6] Motion to Prevent Foreclosure, ECF No. 157.
[7] Order, EFC No. 167.
[8] Notice of Filing Service of Process – Personal Service (NOFSOP-PS), ECF No. 174-1, p. 3, 39-49.
[9] NOFSOP-PS, ECF No. 174-1, p. 4, 39-49.
[10] NOFSOP-PS, ECF No. 174-1, p. 5, 39-49.

On October 27, 2022, the Internal Revenue Service-CI personally served The Village of Silver Springs Community Association, c/o Scott Wilcox, Treasurer, with copies of the Preliminary Order of Forfeiture and the Notice. Service was accepted by Isabella Ruff, Supervising Community Manager.[11]

On October 27, 2022, the Internal Revenue Service-CI personally served The Village of Silver Springs Association, c/o Taylor Association Management, Registered Agent, with copies of the Preliminary Order of Forfeiture and the Notice. Service was accepted by Joseph Venture, Office Manager.[12]

On November 4, 2022, the Internal Revenue Service-CI personally served Steve B. Wolfson, Clark County District Attorney, with copies of the Preliminary Order of Forfeiture and the Notice. Service was accepted by Bailey Brighthill, Office Specialist.[13]

On November 8, 2022, the Internal Revenue Service-CI personally served Laura B. Fitzpatrick, Clark County Treasurer, with copies of the Preliminary Order of Forfeiture and the Notice. Service was accepted by Birtha Gariano, Public Services Specialist.[14]

On April 27, 2023, the United States filed a motion to prevent Clark County from transferring the deed of Coralino to the county for unpaid taxes.[15] On behalf of Clark County, the Clark County District Attorney's Office filed a non-opposition to the motion.[16] On May 18, 2023, the Court granted the Motion.[17]

On January 11, 2023, Casutt filed a pro se Motion to Withdraw Plea.[18] On January 18, 2023, the Court held a motion hearing, appointed new counsel for Casutt, and set a briefing schedule.[19] On March 1, 2023, the Court held a Scheduling Conference, withdrew the pro se motion, and gave the defendant until June 30, 2023, to file a new motion to

---

[11] NOFSOP-PS, ECF No. 174-1, p. 6, 39-49.
[12] NOFSOP-PS, ECF No. 174-1, p. 7, 39-49.
[13] NOFSOP-PS, ECF No. 174-1, p. 8, 39-49.
[14] NOFSOP-PS, ECF No. 174-1, p. 11, 39-49.
[15] Motion to Prevent, ECF No. 185.
[16] Notice of Non-Opposition, ECF No. 187.
[17] Order Granting Motion to Prevent Transfer of Deed, ECF No. 188.
[18] Motion to Withdraw the Plea Deal, ECF No. 170.
[19] Minutes, ECF No. 175.

4

withdraw.[20] On June 29, 2023, Casutt filed a Motion to Withdraw Plea.[21] The government filed its response July 13, 2023.[22] Casutt filed his reply July 20, 2023.[23] On August 16, 2023, the Court denied the Motion to Withdraw Plea.[24]

On October 12, 2023, the Court held Casutt's sentencing hearing and entered the Final Order of Forfeiture, including the forfeiture of Coralino.[25] On October 13, 2023, Casutt filed a Notice of Appeal, which automatically stayed the finality of the forfeiture.[26] On October 30, 2023, the Court entered an Amended Final Order of Forfeiture to clarify that any potential third-party interests are extinguished and the United States of America has clear title of the property under 21 U.S.C. § 853(n)(7) and may warrant good title to any subsequent purchaser or transferee.

**B. Statement of Facts**

The government references the facts set forth in the Indictment and the Plea Agreement, and hereby incorporates them as if fully set forth herein.[27]

On May 15, 2020, Financial Institution A wire transferred $349,775 of the fraudulently obtained PPP loan proceeds into the WF 4506 account.[28] From then, Casutt implemented a scheme to launder the funds by disguising withdrawals as "back pay" or "pandemic pay" for friends and family members who were posing as Casutt's employees. On May 18, 2020, a balance of $6,621.18 minus $143.99, totaling a net of $6,477.19 cannot be shown as illegal proceeds under the accounting method of the Lowest Intermediate Balance Rule (LIBR). Between on or about May 18, 2020, and June 18, 2020, Casutt issued approximately 38 checks and cashier's checks to himself, family members, and other

---

[20] Minutes, ECF No. 182.
[21] Motion to Withdraw Plea, ECF No. 191.
[22] Response to Motion to Withdraw, ECF No. 192.
[23] Reply to Response, ECF No. 193.
[24] Minutes or Motion Hearing, ECF No. 201.
[25] Minutes of Sentencing Hearing, ECF No. 212; Final Order of Forfeiture, ECF No. 210.
[26] Notice of Appeal, ECF No. 214.
[27] LR IA 10-3(a) (citation to court documents are permitted); Indictment, ECF No. 12; Plea Agreement, ECF Nos. 152, 154.
[28] Exhibit (Ex.) 1, excerpt of WFB 4506 statements, p. 54; Plea Agreement, ECF No. 154, p. 11.

5

individuals.[29] The checks' total amount was approximately $359,900, the source of which was PPP loan proceeds. On some of the checks, Casutt wrote the memo "pandemic pay" or "back pay." The following chart summarizes the transfers out of the WF 4506 account:

| Check # | Memo | Date Processed | Amount | Payee |
|---|---|---|---|---|
| 645105755 | None | 5/18/20 | $8,330 | Family Member A |
| 0001 | None | 5/19/20 | $8,330 | Family Member A |
| 0002 | None | 5/19/20 | $8,330 | Brandon Casutt |
| 0003 | None | 5/19/20 | $8,330 | Brandon Casutt |
| 102 | Back pay | 6/02/20 | $8,330 | Family Member C |
| 103 | Back pay | 6/02/20 | $8,330 | Family Member C |
| 105 | Pandemic pay | 6/02/20 | $8,330 | Family Member C |
| 106 | Pandemic pay | 6/02/20 | $8,330 | Family Member A |
| 107 | Pandemic pay | 6/02/20 | $8,330 | Brandon Casutt |
| 101 | Back pay | 6/05/20 | $8,330 | Family Member B |
| 104 | Pandemic pay | 6/05/20 | $8,330 | Family Member B |
| 109 | Pandemic pay | 6/05/20 | $8,330 | B.A. |
| 108 | Pandemic pay | 6/08/20 | $8,330 | J.M. |
| 110 | Pandemic pay | 6/08/20 | $8,330 | K.S. |
| 645102733 | none | 6/10/20 | $60,000 | Casutt |
| 645105827 | none | 6/10/20 | $10,000 | Casutt |
| 645105828 | none | 6/10/20 | $10,000 | Casutt |
| 645105829 | none | 6/10/20 | $10,000 | Casutt |
| 645105830 | none | 6/10/20 | $10,000 | Casutt |
| 645105831 | none | 6/10/20 | $10,000 | Casutt |
| 120 | Pandemic pay | 6/11/20 | $8,330 | T.T. |
| 112 | Pandemic pay | 6/15/20 | $8,330 | Family Member D |
| 113 | Pandemic pay | 6/15/20 | $8,330 | Family Member E |
| 01 | none | 6/16/20 | $8,330 | H.D.H. |
| 02 | none | 6/16/20 | $8,330 | Sit.H. |
| 03 | none | 6/16/20 | $8,330 | Y.D.H. |
| 04 | none | 6/16/20 | $8,330 | Sis.H. |
| 05 | none | 6/16/20 | $8,330 | H.G.H. |
| 06 | none | 6/16/20 | $8,330 | T.H. |
| 111 | Pandemic pay | 6/16/20 | $8,330 | M.B. |
| 121 | Pandemic pay | 6/16/20 | $8,330 | T.L. |
| 122 | Pandemic pay | 6/16/20 | $8,330 | J.K. |
| 114 | Pandemic pay | 6/18/20 | $8,330 | S.S. |
| 115 | Pandemic pay | 6/18/20 | $8,330 | G.S. |
| 116 | Pandemic pay | 6/18/20 | $8,330 | T.S. |
| 119 | Pandemic pay | 6/18/20 | $8,330 | A.S. |

Each check of $8,330 is the maximum monthly payroll amount allowed under PPP rules. The PPP loan allows a maximum annual salary of $100,000 per year for an employee, or $8,330 per month. Casutt made payments to many members of several

/ / /

---

[29] Ex. 1, p. 54, 58-59, 64; see chart below.

different families: Family H's, Family S's, and the Casutts. Participants then diverted most of the proceeds back to the Foundation's WF 1455 account, under Casutt's control.[30]

Prior to receiving any PPP loan proceeds via the transactions described above, the balance on the Foundation's WF 1455 bank account Casutt controlled was about $14,152.20. On or about April 27, 2020, SBA advanced $10,000 of the fraudulently obtained SBA EID loan. Of the $14,152.30, $4,152.50 cannot be shown as illegal proceeds, and $10,000 was illegal proceeds under LIBR. On May 18 and 19, 2020, Casutt spent $564.91, leaving $3,587.59 that cannot be shown as illegal proceeds under LIBR. On May 21, 2020, a $1,600 check was deposited into the Foundation's WF 1455 account from the JPMC 3553 account that cannot be shown as illegal proceeds under LIBR. On May 21, 2020, the WF 1455 account had $5,187.59 that cannot be shown as illegal proceeds, and illegal proceeds of $10,000 under LIBR. As a result of the transactions described above and receiving the proceeds of the EID loan, by June 17, 2020, the balance of the Foundation's WF 1455 account was $430,943. Of the $430,943, $5,171.40 cannot be shown as illegal proceeds, and $425,771.60 was illegal proceeds under LIBR.

On or about May 31, 2020, Casutt through the Foundation, submitted a Residential Purchase Agreement to purchase the property located at 1924 Coralino Drive, Henderson, Nevada 89074 for $399,000.[31]

On or about June 2, 2020, Title Company A received a check, signed by Casutt, in the amount of $10,000 for the purpose of "earnest money for new house." Casutt wrote the check on the Foundation's WF 1455 bank account. The funds were for the purchase of the 1924 Coralino Drive property. Of the $10,000, $5,101.41 cannot be shown as illegal proceeds, and $4,898.59 was illegal proceeds under LIBR on June 3, 2020.[32]

Between June 4, 2020, and June 17, 2020, 19 deposits were made into Foundation's WF 1455 account, including the EID loan of $149,900, totaling approximately $425,890 of

---

[30] Ex. 2, WFB 1455 June 30, 2020, statement.
[31] Ex. 3, Residential Purchase Agreement.
[32] Ex. 4, Copy of earnest money check.

mostly illegal proceeds.[33] Of the $425,890, $5,197.33 cannot be shown as illegal proceeds, and $420,692.67 was illegal proceeds under LIBR.

On June 23, 2020, Casutt wire transferred $388,859.03 from the Foundation's WF 1455 account to Title Company A.[34] Of the $388,859.03, $5,110.94 cannot be shown as illegal proceeds, and $383,748.09 was illegal proceeds under LIBR. The funds were for the purchase of the 1924 Coralino Drive property. As outlined above, the sources of these funds were the proceeds of the fraudulent PPP and EID loans, and Casutt laundered most of the funds through sham payroll checks to Casutt's friends, family, and associates.

On September 2, 2020, the grand jury returned the Indictment.[35] This Court entered Lis Pendens on September 22, 2020,[36] securing the real property known as 1924 Coralino Drive, Henderson, Nevada 89074, for judicial forfeiture in accordance with an indictment of the United States of America. The government recorded the Lis Pendens on September 22, 2020. The Court entered the Preliminary Order of Forfeiture on October 14, 2022.[37] The government recorded the Order with Clark County on October 17, 2022. On October 25, 2022, the government filed a Motion to Prevent Foreclosure under 21 U.S.C. § 853(k), to prevent the HOA from foreclosing due to unpaid HOA fees.[38] On October 26 and 27, 2022, the government personally served the HOA.[39] The HOA failed to file a response to the motion. On November 25, 2022, the government filed a Reply to Non-Response to Government's Motion to Prevent Foreclosure under 21 U.S.C. § 853(k).[40] On November 28, 2022, the government served the reply and filed the certificate of service with the court.[41] This Court granted the government's motion on November 29, 2022.[42]

---

[33] Ex. 2.
[34] Ex. 5, WFB 1455 Wire Transfer.
[35] Indictment, ECF No. 12.
[36] Notice of Lis Pendens, ECF No. 27.
[37] POOF, ECF No. 156.
[38] Motion to Prevent Foreclosure, ECF No. 157.
[39] Certificate of Service, ECF No. 158.
[40] Reply to Non-Response, ECF No. 163.
[41] Certificate of Service, ECF No 166.
[42] Order Granting Motion to Prevent Foreclosure, ECF No. 167.

Casutt stopped paying the HOA fees and taxes on Coralino. As of October 13, 2022, Casutt was delinquent $2,447.68.[43] According to a Notice of Intent to Deed the property received April 7, 2023, as of March 16, 2023, Casutt owed $8,267.91 in unpaid property taxes and fees.[44] Both the HOA's and Clark County's interests in Coralino were extinguished and they are unable to collect their fees while the property is owned by the United States.

**II. ARGUMENT**

The United States now requests this Court to authorize the United States Treasury to direct its contractor to designate a real estate broker or agent to sell the real property located at 1924 Coralino Drive, Henderson, Nevada 89074.

The grounds for granting the Order for an Interlocutory Sale of 1924 Coralino Drive are as follows: First, this Court is authorized to approve interlocutory sales. Second, the HOA and Clark County Treasurer are accumulating losses because they are unable to collect their taxes and fees while their interests in Coralino are extinguished. Sale would allow both entities to begin collecting fees again instead of losing revenue through the time of the appeal. Third, granting an interlocutory sale will avoid accidents and liability accruing against Coralino while it is in the custody and control of the IRS. Fourth, the sooner Coralino is sold the more proceeds will be available to pay toward Casutt's money judgment and possibly to pay victims through the restoration process, an exclusive Executive Branch decision delegated only to the Chief of MLARS.

This Court has authority to issue an Interlocutory Order of Sale "[a]t any time before entry of a final forfeiture order… in accordance with Supplemental Rule G(7) of the Federal Rules of Civil Procedure[.]"[45] The Final Order of Forfeiture is entered, but forfeiture is not final until the appeal is completed.

> On motion by a party or a person having custody of the property, the court may order all or part of the property sold if: (A) the property is perishable or at risk of

---

[43] *See* Motion to Prevent Foreclosure, ECF No. 157-1, p. 3.
[44] See Motion to Prevent Transfer, ECF No. 185-1, p. 9.
[45] Fed. R. Crim. P. 32.2(b)(7) (ellipsis and brackets added).

9

deterioration, decay, or injury by being detained in custody pending the action; (B) the expense of keeping the property is excessive or is disproportionate to its fair market value; (C) the property is subject to a mortgage or to taxes on which the owner is in default; or (D) the court finds other good cause.[46]

Only one of the grounds for interlocutory sale is required since Supplemental Rule G(7)(b) is disjunctive.[47]

Two reasons for the interlocutory sale apply in this case regarding Coralino: (1) the property is perishable or at risk of deterioration, decay, or injury by being detained in custody pending the appeal and (2) the court finds other good cause, (a) preserving the value of Coralino and avoiding accidents or liability accruing against the property; (b) reducing losses to the HOA and Clark County Treasurer because they are unable to collect their taxes and fees while their interests in Coralino are extinguished; and (c) the sooner Coralino is sold, more proceeds will be available to pay toward Casutt's money judgment and possibly to pay victims through the restoration process, an exclusive Executive Branch decision delegated only to the Chief of MLARS.[48]

Under Rule 32.2(b)(3), "[t]he court may include in the order of forfeiture conditions reasonably necessary to preserve the property's value pending any appeal."[49] The IRS has assumed control of the property and has started accumulating maintenance costs, fees, and other expenses to maintain the property. If an accident occurred on the property, that would rapidly decrease the property's equity. The government seeks to preserve as much of the equity as possible for the forfeiture proceedings.[50]

---

[46] Supp. R. G(7)(b)(i).

[47] *See Shelter Cove Marina, Ltd. V. M/Y ISABELLA,* No. 3:17-cv-01578-GPC-BLM, 2017 WL 5906673, 2 (S.D. Cal. Nov. 30, 2017) (explaining that another Supplemental Rule for interlocutory sale with similar language is disjunctive); *Cal. Yacht Marina-Chula Vista, LLC v. S/V OPILY*, No. 14-cv-1215-BAS-BGS, 2015 WL 1197540, 2 (S.D. Cal. Mar. 16, 2015) (explaining the same).

[48] Supp. R. G(7)(b)(i); Fed. R. Crim. P. 32.2(b)(7); S*ee United States v. One Parcel of Real Prop. Described as Lot 41, Berryhill Farm Estates*, 128 F.3d 1386, 1389–90 (10th Cir. 1997).

[49] Fed. R. Crim. P. 32.2(b)(3) (brackets added).

[50] *United States v. Haley*, No. 11–CR–0540–WDQ, 2011 WL 6202787, 1 (D. Md. Dec. 8, 2011) (granting the interlocutory sale to avoid liability for accidents and to "avoid falling in arrears on the payment of applicable property taxes.").

In *United States v. 479 Tamarind Drive, Hallendale*, the court granted the interlocutory sale because the property had "[m]ore than $40,437.55 in taxes… currently due… raising the risk that the County may move to impose a lien and thereby diminish the property's value[.]"[51] Clark County did impose a lien against Coralino and moved for a tax sale. The County did not move forward with a tax sale only because the United States moved to prevent the sale to protect its forfeiture interests.

When the United States served the HOA and the Clark County Treasurer, they had 30 days to file a petition to assert their interest in the property under 21 U.S.C. § 853(n).[52] Both the Clark County Treasurer and the HOA failed to assert a claim to the property and their interests are extinguished.[53] While their interests are extinguished, they are unable to collect their fees. Selling Coralino would renew their interests in the property with the new owner so they can begin collecting their fees again.

On November 20, 2023, the Clark County Treasurer again sent a Notice of Intent to Sell Real Property for unpaid property taxes.[54] Both the County and the HOA are accruing losses while their interests in Coralino are extinguished.

The sale proceeds of the forfeited property will be the "substitute res… in place of the property that was sold, [and] the United States must maintain them in an interest-bearing account" pending the appeal.[55] Selling the property is in the best interests of all involved.

---

[51] *United States v. All Right, Title & Interest in Prop., Appurtenances, & Improvements Known as 479 Tamarind Drive, Hallendale, Fla.*, 98 CIV. 2279 DLC, 2012 WL 3886698, 2 (S.D.N.Y. Sept. 7, 2012) (brackets and ellipses added); *See also United States v. Fisch*, No. H-11-722, 2016 WL 4702588 (S.D. Tex. Sept. 8, 2016).

[52] *See* Motion to Prevent, ECF No. 185 for full arguments.

[53] 21 U.S.C. § 853(n)(6) and (n)(7); Advisory committee's note-2000, subdivision (b); Fed. R. Crim. P. 32.2(c)(2); *United States v. Marion*, 562 F.3d 1330, 1336-37 (11th Cir. 2009) (brackets added) ("Under the statute, if no third-party petitions are filed, the United States obtains clear title to the property 'following the expiration of the period provided in paragraph (2) for the filing of such petitions.' 21 U.S.C. § 853(n)(7). Likewise, Rule 32.2(c)(2) provides that a third party who fails to file a timely petition may not object when the preliminary order of forfeiture becomes the final order of forfeiture."); *See* Order Granting Motion to Prevent Transfer of Deed, ECF No. 188.

[54] Ex. 6, Notice of Intent to Sell dated November 20, 2023.

[55] Supp. R. G(7)(b)(iv) (brackets and ellipsis added); *United States v. King*, No. 10 CR. 122 (JGK), 2010 WL 4739791, 4 (S.D.N.Y. Nov. 12, 2010).

Casutt's interests are protected by providing maximum return to be paid toward his money judgment; the United States' interests are protected by removing the financial obligations and possible liabilities for maintaining the property; and the HOA and Clark County can begin collecting their fees and mitigating their losses.

"A sale must be made by a United States agency that has authority to sell the property, by the agency's contractor, or by any person the court designates."[56] The government recommends this Court authorize the United States Treasury to direct its contractor to designate a real estate broker or agent to sell the property under "28 U.S.C. §§ 2001, 2002, and 2004."[57]

## III. JUDICIAL SALES PROCEDURE

If a court orders the sale of property, the sale must comply with 28 U.S.C. §§ 2001 and 2002. These statutes provide procedural safeguards to ensure that court-ordered sales are made on terms that best preserve the parties' interests. Section 2001(a) authorizes public sales of property and sales by court-appointed receivers. Section 2001(b) permits private sales of property for cash or other consideration after a hearing of which notice to all interested parties shall be given by publication, or as otherwise directed by the court, and after the court finds that the best interests of the estate will be conserved thereby.

By this Motion, the United States requests authorization to proceed with a private sale of the above-listed property. Based upon the reasons set forth herein, the United States believes that a prompt sale of the property by the United States, followed promptly by releasing the proceeds to the United States affords the best protection to all interested parties. The United States believes that a private sale versus a public sale will allow the United States the discretion to sell the property in the most commercially feasible manner and maintain the most value.

As required by section 2001(b), notice of the Government's Motion must be given by publication or otherwise as this Court directs. The government takes the position that

---

[56] Supp. R. G(7)(b)(ii).
[57] Supp. R. G(7)(b)(iii).

placing the real property in a multiple listing service and other major internet websites for real property through a local real estate broker or agent, will meet this requirement.

Under section 2001(b), three disinterested persons must appraise the property. To meet that requirement, the United States has obtained the following neutral appraisal estimates as of December 6, 2023:

1. Zillow.com for $546,700,
2. Realtor.com for $562,938; and
3. Redfin.com for $557,909.

**IV. CONCLUSION**

Based on the foregoing reasons, this Court should order the interlocutory sale of the 1924 Coralino Drive, Henderson, Nevada 89074.

Dated: December 8, 2023.

Respectfully submitted,

JASON M. FRIERSON
United States Attorney

*/s/ Daniel D. Hollingsworth*
DANIEL D. HOLLINGSWORTH
Assistant United States Attorney

IT IS SO ORDERED:

ANDREW P. GORDON
UNITED STATES DISTRICT JUDGE

DATED: January 11, 2024

13