UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| UNITED STATES OF AMERICA, | Case No.: 2:20-cr-00231-APG-NJK |
|---|---|
| Plaintiff | **Order Denying Casutt's Motion to Vacate** |
| v. | [ECF No. 251] |
| BRANDON CASUTT, | |
| Defendant | |

Brandon Casutt pleaded guilty to wire fraud and concealment money laundering based on COVID-19 relief loans he fraudulently obtained. He moves to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255, arguing that his counsel gave ineffective assistance, the prosecution committed misconduct, he is factually innocent, and the government's search warrant and indictment were defective. The government responds that Casutt's counsel was not ineffective, Casutt has not shown any prejudice from the allegedly ineffective representation, and Casutt waived his other grounds to vacate in his guilty plea. Because Casutt has not met his burden on any of his grounds to vacate, I deny his motion.

**I.  BACKGROUND**[1]

Casutt applied for loans made available in response to the COVID-19 pandemic through the Paycheck Protection Program (PPP) and Economic Injury Disaster Loan (EIDL) program. In his applications, Casutt falsely represented that his business and nonprofit foundation employed many more employees and had much larger monthly payrolls than they had. Casutt applied for more than $5.5 million in loans and received at least $509,775 from the two programs.

---

[1] All facts are taken from the plea agreement (ECF No. 154), which Casutt swore under oath were true and accurately describe what he did regarding these charges. ECF No. 173 at 5, 27-28.

Casutt laundered the loan proceeds by issuing a series of checks to himself, family members, and other individuals, writing "back pay" or "pandemic pay" in the memo lines. ECF No. 154 at 11. These checks were then deposited into an account controlled by Casutt under his charitable foundation's name. The foundation, under Casutt's direction, then used the funds to purchase a house in Henderson, Nevada. Casutt pleaded guilty to one count of wire fraud and one count of concealment money laundering.

## II. ANALYSIS

### A. Ineffective Assistance of Counsel

Casutt argues that his various lawyers[2] were ineffective for (1) representing him despite conflicts of interest, (2) pressuring Casutt into taking a plea deal, (3) failing to challenge the warrant application and indictment, and (4) not adequately pursuing a motion to withdraw Casutt's plea. The government responds that most of Casutt's complaints are tactical decisions that are within the range of reasonable representation and that Casutt has not demonstrated prejudice from his counsel's performance.

To prevail on an ineffective assistance of counsel claim, Casutt must prove that (1) his attorney's "representation fell below an objective standard of reasonableness," and (2) his attorney's deficient performance prejudiced Casutt such that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland v. Washington*, 466 U.S. 668, 687-88, 694 (1984). I must apply a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. "Counsel's failure to make a futile motion does not constitute ineffective assistance of counsel." *James v. Borg*, 24 F.3d 20, 27 (9th Cir. 1994). The right to effective

---

[2] Casutt was represented by different lawyers at various times during the pendency of this case.

2

assistance applies during "critical stages" of criminal proceedings, including plea bargaining. *Missouri v. Frye*, 566 U.S. 134, 140 (2012) (quotation omitted).

### 1. Conflict of Interest

Casutt argues that his initial attorney, Assistant Federal Public Defender Brian Pugh, had a conflict of interest because Pugh was friends with "the guy that was lying about [Casutt]." ECF No. 251 at 9. Casutt does not clarify who this friend is. Additionally, Casutt asserts that Pugh was a former prosecutor who at one point had one of the convictions he had secured overturned due to misconduct, which made Pugh unwilling to accuse the prosecution in this case of misconduct. The government responds that Casutt fired Pugh early in his case and received representation from other competent attorneys for the remainder; thus Casutt cannot show that any conflict affected performance or resulted in prejudice.

The Sixth Amendment right to counsel includes a "correlative right to representation that is free from conflicts of interest." *Wood v. Georgia*, 450 U.S. 261, 271 (1981). To demonstrate that he received unconstitutional representation due to a conflict, Casutt must "demonstrate that an actual conflict adversely affected his lawyer's performance." *Lockhart v. Terhune*, 250 F.3d 1223, 1230 (9th Cir. 2001) (quotation omitted). An actual conflict is "a conflict that affected counsel's performance—as opposed to a mere theoretical division of loyalties." *United States v. Walter-Eze*, 869 F.3d 891, 901 (9th Cir. 2017) (quotation omitted). Casutt need not show actual prejudice, only that "the attorney's behavior seems to have been influenced by the conflict." *Lockhart*, 250 F.3d at 1231 (quotation omitted). "To establish an 'adverse effect' [Casutt] must show that some plausible alternative defense strategy or tactic might have been pursued but was not and that the alternative defense was inherently in conflict with or not undertaken due to the attorney's other loyalties or interests." *Walter-Eze*, 869 F.3d at 901.

Casutt had his initial appearance on August 25, 2020. ECF No. 4. Pugh entered his appearance on September 8. ECF No. 19. Pugh made no motions in this case and Casutt moved for new counsel on March 3, 2021. ECF No. 38. On March 15, Magistrate Judge Koppe held a hearing, after which Pugh was replaced by another assistant federal public defender, who entered her appearance on March 23. ECF Nos. 41; 42. The new attorney and her cocounsel represented Casutt for nearly two years throughout pretrial proceedings up until Casutt moved to withdraw his guilty plea in January 2023. ECF Nos. 170; 175.

Casutt has not shown that Pugh had an actual conflict or even a mere theoretical division of loyalties. According to Casutt, Pugh told him that Pugh "had a good relationship with the prosecution, referring to them as friends and good people." ECF No. 38 at 1. According to Casutt, this "conflict" made Pugh unwilling to file more adversarial motions accusing the prosecution of misconduct. The same could be said for many public defenders, regardless of their prior experiences, who maintain an amicable relationship with the prosecutors they face in court daily. Casutt must show that the conflict affected Pugh's performance. And even after Casutt received new counsel, those attorneys declined to pursue Casutt's misconduct allegations because they did not believe the motions were meritorious. *See* ECF No. 180 at 9-11 (sealed).[3]

Even if there was an actual conflict, it did not adversely affect Pugh's performance. Pugh was Casutt's attorney for only a few months and prior to any significant litigation in the case. Casutt identified what he perceived as a conflict and asked to replace Pugh, and Pugh was replaced. Casutt then had ample opportunity to ask his new counsel to raise the concerns Casutt believed Pugh was unwilling to raise. Casutt argues that even after Pugh was no longer his

---

[3] Because Casutt places his attorneys' decisions at issue, I will deem the attorney-client privilege waived for the narrow purpose of deciding this motion.

4

attorney, the same paralegals and other staff from the federal public defender's office remained on his case. But he offers no evidence to impute any perceived conflict Pugh had to any other persons in his office. Casutt received representation free from actual conflicts, so I deny his motion as to conflicts of interest.

### 2. Pressure to Plead Guilty

Casutt argues that Pugh pressured him to accept a plea by saying he had the "WORST JUDGE in this district" who "sentences more severely [than] any other judge." ECF No. 251 at 9. Casutt also asserts that Pugh threatened to subject Casutt to a psychological exam and find him unfit to make his own decisions so Pugh could enter a plea without Casutt's resistance. The government does not specifically respond to this argument but asserts that Casutt failed to meet his burden on both ineffective assistance and prejudice.

An attorney applying undue pressure or threats to coerce a client into pleading guilty could fall beneath the standard of reasonable representation. *See Iaea v. Sunn*, 800 F.2d 861, 866-67 (9th Cir. 1986) (acknowledging holdings where coercion by defense counsel can render a plea involuntary). But even if these claims are true, Casutt cannot show that he was prejudiced by this pressure. As already mentioned, Casutt fired Pugh early in this case and continued with other counsel. At no time was Casutt deemed incompetent or unfit to make his own decisions in this case. And although Casutt did eventually plead guilty, it was years after Pugh was removed from the case and after vigorous litigation by Casutt's new attorneys. Casutt has not pointed to any evidence to show that it was Pugh's alleged pressure that caused him to plead guilty, or that he would not have pleaded guilty if not for that pressure. Thus, I deny his motion as to pressure to plead.

/ / / /

### 3. Failure to Challenge Warrant and Indictment

Casutt argues his attorneys were ineffective assistance for not challenging the search warrant for his home and electronic devices because the government made false statements in the supporting affidavit. Casutt claims that a similar false statement was made to secure his indictment. Casutt identifies two statements in the warrant and indictment that he claims were false:[4] (1) a reference to Casutt's foundation and whether it needed to report to the state unemployment fund, and (2) that PPP loan proceeds must be used on certain permissible expenses. The government responds that Casutt's attorneys made tactical decisions not to raise these challenges and Casutt has not shown that the result would have been different if his attorneys had raised them.

Casutt's attorneys made a reasonable strategic decision not to raise these arguments. The attorneys challenged the search and statements Casutt made to investigators during the search on other grounds in a motion to suppress. ECF Nos. 48; 60. Magistrate Judge Koppe held a hearing on that motion, and after Casutt received an unfavorable ruling his attorneys objected to Judge Koppe's findings, which I denied. ECF Nos. 64; 66; 69; 70; 82. During the hearing on Casutt's first motion to withdraw his plea, Casutt acknowledged that he raised his concerns about the supposed false statements with his counsel, who stated that at least three attorneys looked at the issue and "litigated it the way that we believed it could have been litigated under precedent."

---

[4] Casutt identifies other statements in his reply brief. ECF No. 264 at 3. But because he raises these arguments for the first time in reply and the government has had no opportunity to respond, I need not consider them. *See Zumani v. Carnes*, 491 F.3d 990, 997 (9th Cir. 2007) ("The district court need not consider arguments raised for the first time in a reply brief."). Even if I were to consider these statements, Casutt fails to show that it was ineffective assistance to not challenge them or that such a challenge would lead to a different outcome.

ECF No. 180 at 9-11 (sealed).  This strategic decision falls within the wide range of reasonable assistance.

Casutt has also not shown that he was prejudiced by demonstrating that the outcome would have been different had his attorneys brought these challenges.  The search warrant affidavit stated that Casutt's charitable foundation had not made contributions to unemployment insurance, which was one of three reasons given to demonstrate that a representation on one of the loan applications was likely false. ECF No. 57 at 12.  A charitable employer in Nevada may opt out of unemployment contributions by filing a written notice with the state Administrator. Nev. Rev. Stat. § 612.553(2)(b).  But Casutt does not claim that his foundation ever filed the required notice or explain how the government's incomplete representation of this law undermines the search warrant's probable cause.

The second statement Casutt asserts is false and should have been attacked is "PPP loan proceeds must be used by the business on certain permissible expenses—payroll costs, interest on mortgages, rent, and utilities." ECF No. 57 at 9.  Casutt claims that the loans could be used to pay for anything and that these enumerated expenses only apply to whether the loan is forgivable.  And because the period to apply for loan forgiveness or begin paying back the loan had not yet run, Casutt argues he could have still complied with the law by repaying the loan. But Casutt was not accused of abusing the loan forgiveness provision.  Rather, he was accused of making false statements on the loan application, which included how he would spend the loan proceeds, the number of existing employees, and the amount of monthly payroll. *See id.* at 11-14. Casutt has not established that the government's statement about the PPP's requirements was material to finding probable cause for either the search warrant or indictment.

Casutt has not demonstrated that his attorneys' decision not to challenge the statements used to obtain the search warrant and indictment fell outside the wide range of reasonable representation or that he was prejudiced by the decision. I therefore deny his motion on those grounds.

### 4. Motion to Withdraw Plea

Casutt argues that his final counsel, Chris Mishler, who was appointed after Casutt moved to withdraw his plea, failed to pursue arguments Casutt made in his pro se motion to withdraw his plea. According to Casutt, Mishler did not pursue these arguments because he had a prior relationship with Casutt's earlier counsel (Casutt does not clarify which previous counsel) and they remained friends. Casutt raises this argument for the first time in his reply brief, so I need not consider it. *See Zumani*, 491 F.3d at 997. But even if I were to consider its merits, it fails for the same reasons as his other ineffective assistance claims.

Casutt claims that Mishler agreed his plea deal should be withdrawn but was constrained by his friendship with prior counsel. But Mishler moved to withdraw Casutt's plea, albeit making a different argument than Casutt's pro se motion. *See* ECF Nos. 170; 191. Mishler made the strategic decision to present an argument he believed was supported by law. Casutt has not demonstrated that this decision fell outside the wide range of reasonable representation. And Casutt has not demonstrated that had Mishler maintained Casutt's arguments, the outcome would have been different. I therefore deny Casutt's motion based on Mishler's failure to withdraw his plea agreement.

### B. Prosecutorial Misconduct

Casutt's claim of prosecutorial misconduct is based on the same allegedly false statements in the search warrant affidavit and used to secure his indictment. The government

denies engaging in misconduct and argues that Casutt waived these challenges in his plea agreement and has not shown that any of these statements prejudiced him. Casutt replies that the government made false statements about the amount of PPP loans Casutt spent. He also asserts in his reply that the government withheld the fact that Casutt made "rent payments" to his foundation when securing the search warrant and indictment.

As part of his plea agreement, Casutt waived "all collateral challenges, including any claims under 28 U.S.C. § 2255, to [Casutt's] conviction, sentence, and the procedure by which the district court adjudicated guilt and imposed sentence, except non-waivable claims of ineffective assistance of counsel." ECF No. 154 at 17. The Constitution requires that a guilty plea be voluntary and that Casutt "make related waivers knowingly, intelligently, and with sufficient awareness of the relevant circumstances and likely consequences." *United States v. Ruiz*, 536 U.S. 622, 629 (2002) (simplified). Casutt need only be aware of what rights he is waiving in general even if he is unaware of the specific detailed consequences. *Id.* For example, a defendant may enter a knowing, intelligent, and voluntary guilty plea despite misapprehending the quality of the State's case, misapprehending likely penalties, or where his counsel failed to find a potential constitutional infirmity in grand jury proceedings. *Id.* at 630-31 (collecting cases); *see also United States v. McCloud*, No. 21-16264, 2023 WL 3018064, at *1 (9th Cir. Apr. 20, 2023) (denying § 2255 motion in part because the prosecutor's misrepresentations or omissions at suppression hearing did not induce defendant to plead guilty).

Even if Casutt is correct that the government misstated facts or law while obtaining the search warrant and indictment, he pleaded guilty voluntarily and knowingly with an understanding of the nature of the charges against him and the consequences of his plea. *See* ECF No. 173 at 5-16, 20-23. Casutt acknowledges that he has been pointing out these alleged

misrepresentations since early in his case while Pugh was still his attorney. *See* ECF No. 251 at 9. His disagreement about Nevada unemployment law did not induce his guilty plea because he did not plead guilty for nearly two more years. Similarly, Casutt does not argue that the government not giving the grand jury information about the rent payments induced his guilty plea. And even if this omission had induced his plea, the prosecution was not obliged to present to the grand jury evidence of the rent checks. *See United States v. Williams*, 504 U.S. 36, 52-54 (1992) (declining to require prosecutors to present exculpatory evidence to grand juries).

Casutt's assertion that the plea agreement misstated the amount of PPP money he spent also did not render his plea involuntary or unknowing. Casutt swore under oath that he had read the plea agreement and that the factual basis for his plea was true. ECF No. 173 at 5, 8, 26-27. And the amount of PPP money spent was not an element of either wire fraud or concealment money laundering, which were the two counts Casutt pleaded guilty to. The amount spent was not even material to sentencing because the plea agreement identified the intended loss of $5,764,480 as the relevant amount for sentencing, and Casutt does not dispute this amount. ECF No. 154 at 13-14. Casutt points to no evidence that the allegedly incorrect figure about how much he spent induced him to plead guilty.

None of the government statements Casutt asserts are false prevented him from entering an intelligent, knowing, and voluntary guilty plea or waiving related rights. Consequently, I deny Casutt's motion as to prosecutorial misconduct.

**C. Actual Innocence**

Casutt argues that the proffered testimony of his expert witness demonstrates that he is actually innocent of wire fraud. The government responds that it does not understand Casutt to be making a claim of factual innocence, as opposed to legal insufficiency, and that the expert

10

witness's opinion is not sufficient to show that Casutt did not commit wire fraud. Casutt clarifies in his reply that he is arguing that he is actually and factually innocent.

Casutt may seek collateral review of his plea "if he can establish that [a] constitutional error in his plea colloquy has probably resulted in the conviction of one who is actually innocent." *Bousley v. United States*, 523 U.S. 614, 623 (1998) (quotation omitted). "It is important to note in this regard that 'actual innocence' means factual innocence, not mere legal insufficiency." *Id.* To show that he is actually innocent, Casutt "must demonstrate that, in light of all the evidence, it is more likely than not that no reasonable juror would have convicted him." *Muth v. Fondren*, 676 F.3d 815, 819 (9th Cir. 2012) (quotation omitted). Because Casutt entered into a plea agreement, his showing of actual innocence must extend to charges forgone by the government during plea bargaining. *Bousley*, 523 U.S. at 624.

Casutt has not demonstrated that, in light of all of the evidence, no reasonable juror would have convicted him. Casutt relies on law professor Shaun Martin's proffered testimony that banks were being encouraged to approve pandemic relief loans without underwriting or investigating, thus rendering any misrepresentations on loan applications immaterial. *See e.g.*, ECF No. 161 at 14, 16-17, 35-37, 42-44. Professor Martin concluded that nothing in this case would meet the Ninth Circuit standard of materiality. *Id.* at 61. But Professor Martin's testimony is not the law. A jury would be free to disregard his testimony in favor of other evidence. And the government would be able to cross examine Professor Martin to test his credibility. Considering other available evidence, a reasonable juror might not believe Professor Martin's assertion that nothing in Casutt's loan applications was material. For example, evidence shows that some bank officials requested additional supporting documents to verify Casutt's payroll and tax information and ultimately rejected his loan applications. *See* ECF Nos. 207-5; 207-6; 154 at

12-13; *see also* ECF No. 161 at 42-43 (Professor Martin testifying that if lenders knew the representations made to them were untrue that "would make a difference" because if they knew that the information the applicant provided was false, "they shouldn't have lended," would have been "participants in the fraud," and lenders generally "did not want to be subjected to criminal liability for that"). Because Casutt has failed to meet his burden to establish that he is actually innocent of wire fraud and concealment money laundering, I deny his motion on that ground.

### D. Defective Warrant and Indictment

Casutt argues that the government's search warrant application and indictment were deficient because the government used false statements to obtain the warrant and indictment and because the government withheld exculpatory information from those applications. The government does not directly address this argument but responds that Casutt waived any such collateral attacks in his plea agreement.

Casutt waived these arguments in his plea agreement. ECF No. 154 at 17. And as I discussed with respect to his ineffective assistance of counsel claim, Casutt has not shown that these alleged misrepresentations were material. I therefore deny his motion as to the search warrant application and indictment.

## III. CONCLUSION

I THEREFORE ORDER that defendant Brandon Casutt's motion to vacate, set aside, or correct his sentence **(ECF No. 251) is DENIED**.

I FURTHER ORDER that no certificate of appealability shall issue because reasonable jurists would not find my assessment of the constitutional claims debatable or wrong and the questions presented do not deserve encouragement to proceed further.

I FURTHER ORDER the Clerk of Court to enter a separate civil judgment denying defendant Brandon Casutt's § 2255 motion. The Clerk shall file this order and the civil judgment in this case and in the related civil case number 2:24-cv-01882-APG.

DATED this 16th day of May, 2025.

ANDREW P. GORDON
CHIEF UNITED STATES DISTRICT JUDGE